DIAMANTIS, Judge.
Appellant, State of Florida, Department of Highway Safety and Motor Vehicles, appeals a circuit court order granting cer-tiorari, thereby quashing the department’s order of license revocation and directing reinstatement of driving privileges to ap-pellee, Thomas Andrew Hagar. We treat the instant appeal as a petition for writ of certiorari,[1] grant the petition, and quash the order of the circuit court because the record fails to show that the department acted without jurisdiction or failed to follow the essential requirements of law.
Hagar was classified as an habitual traffic offender pursuant to section 322.264[2] of the Florida Statutes (1989). The department issued an order on September 20, 1989 revoking Hagar’s driving privileges for a period of five years pursuant to section 322.27(5)[3] of the Florida Statutes *216 (1989). The order of license revocation listed all the traffic convictions assessed against Hagar in classifying him as a habitual traffic offender, including three Alabama convictions[4] from 1986. Hagar’s traffic convictions covered the period of time from April 23, 1984 through January 16, 1989.
In March of 1988 Hagar requested a transcript of his driving record which the department issued to Hagar on March 15, 1988. That transcript does not contain the three Alabama convictions because the department did not receive notice of those convictions until September 5, 1989.
Hagar filed a petition for writ of certiorari in the circuit court challenging the revocation order pursuant to section 322.31 of the Florida Statutes (1989). Hagar alleged it was inequitable for the department to issue an erroneous transcript, which he relied upon in good faith, and then to later rely upon information not previously provided (i.e., the Alabama convictions) in forming the basis for revocation of his driving privileges. The circuit court granted the petition, finding the revocation order was inequitable and in violation of Hagar’s basic due process rights, and quashed the order of revocation with directions to reinstate Hagar’s driving privileges.
Based upon the record in this case, Hagar cannot be heard to say that it was inequitable for the department to rely upon the three Alabama convictions. Hagar apparently is attempting to take refuge in the equitable doctrines of estoppel or waiver or, alternatively, laches. Hagar argues that if the three Alabama convictions had appeared on the transcript of his driving record issued in March of 1988, he would have modified his conduct and would have utilized available alternatives provided by law (i.e., a court proceeding or driving school) when faced with additional traffic citations. Even if we were to assume that equitable principles apply to the instant case, Hagar’s argument overlooks the crucial fact that the department did not receive notice of the convictions from Alabama until September 5, 1989, one and one-half years after Hagar requested and received a transcript of his driving record. Hagar does not contest that he was convicted in Alabama for these three traffic violations. He was aware of these convictions and he could have altered his conduct accordingly rather than hope that these Alabama convictions would not catch up with him.
Hagar also argues that section 322.27(3)(f)[5] of the Florida Statutes (1989) somehow creates a duty upon the department to send some sort of warning letter to an individual who may be approaching the danger zone of having his or her license suspended for accumulated points. We find this argument to be without merit. Section 322.27(3)(f) does not mandate but instead merely authorizes the department to send a warning letter advising that any future convictions may result in a driver’s *217 license suspension. Assuming, arguendo, that the department was mandated to send a warning letter, the department, on March 30, 1988, sent Hagar notice of a thirty-day suspension based on the fact that he had accumulated twelve points within twelve months pursuant to section 322.27(3)(a) of the Florida Statutes (1987). Consequently, Hagar must have known that he was in a precarious position of accumulated points regarding his driver’s license which could result in additional suspensions or a revocation of his driver’s license.
We reject Hagar’s contentions that the time interval between his first and last convictions and between his last two convictions causes an inequity. Again, even if we were to assume that equitable principles were applicable, the time periods are not so inordinate as to give rise to any equitable doctrine of laches. The record clearly reveals that within a period of less than five years Hagar was able to acquire at least fifteen moving traffic violations. We also note that chapter 322 of the Florida Statutes (1989) does not prescribe any time limitation or period in which the department may take action to suspend or revoke the driver’s license of an individual who has accumulated fifteen moving traffic violations in a period of five years. §§ 322.27, 332.264, Fla.Stat. (1989).
All of the arguments that Hagar now makes were eloquently anticipated by the Florida Supreme Court in Zarsky v. State, 300 So.2d 261 (Fla.1974), where the court upheld the constitutionality of the habitual traffic offender law and stated:
This Court has long held the view that reasonable regulation of an individual’s right to drive is in the interest of public good. In Thornhill v. Kirkman [62 So.2d 740 (Fla.1953) ] this court not only pointed out that the liberties guaranteed by the Bill of Rights, not being absolute, may be regulated in the public interest but also added the observation that, if the holder of a driver’s license “cannot demean himself as a careful user, considerate of the rights of others to do likewise, he becomes a public nuisance and should be excluded temporarily or permanently from their use.” It has been stated that revocation of a driver’s license is not regarded as punishment (cruel, unusual or otherwise) of the offender but as an aspect of protecting the public.
An examination of the standard for defining a habitual traffic offender discloses that it is a reasonable one which bears a significant relationship to the purpose sought. It appears that this standard is applicable to all licensees, and that the statute does not give a benefit to one class of individuals which is not applicable to another group of individuals similarly situated: i.e., all licensees receiving 15 convictions for moving traffic violations for which points may be assessed are treated in the same manner in that their privilege to operate a motor vehicle on the Florida highways is revoked for a period of five (5) years. Such suspension of a driving privilege is a civil administrative act in compliance with legislative mandate dealing with a privilege as opposed to a right.
In conclusion, we note that this Court has previously upheld the habitual offender statutes against attack as ex post facto laws, ruling that a statute is not considered an ex post facto law merely because it provides enhanced punishment for subsequent offenses. (footnotes omitted.)
Id., at 263-264.
Accordingly, we grant the department’s petition for a writ of certiorari, quash the order of the circuit court, and remand this matter to the circuit court with directions that it enter an order reinstating the department’s order revoking Hagar’s driver’s license for a period of five years.
WRIT ISSUED; cause REMANDED with directions.
HARRIS and GRIFFIN, JJ., concur.

. See Fla.R.App.P. 9.040(c); Johnson v. Citizens State Bank, 537 So.2d 96 (Fla.1989). See also Wingate v. Department of Highway Safety and Motor Vehicles, 442 So.2d 1023 (Fla. 5th DCA 1983) (an appeal is not the proper remedy by which to seek review of a certiorari proceeding in the circuit court — the proper remedy is by petition for writ of certiorari).

. § 322.264 "Habitual traffic offender" defined.—
A "habitual traffic offender” is any person whose record, as maintained by the Department of Highway Safety and Motor Vehicles, shows that such person has accumulated the specified number of convictions for offenses described in subsection (1) or subsection (2) within a 5-year period:
[[Image here]]
(2) Fifteen convictions for moving traffic offenses for which points may be assessed as set forth in § 322.27, including those offenses in subsection (1).

. § 322.27 Authority of department to suspend or revoke license.—
******
(5) The department shall revoke the license of any person designated a habitual offender, as set forth in § 322.264, and such person shall not be eligible to be relicensed for a minimum of 5 years from the date of revocation, except as provided for in § 322.271. Any person whose license is revoked may, by petition to the department, show cause why his license should not be revoked.

. § 322.24 Suspending resident’s license upon conviction in another state. — The department is authorized to suspend or revoke the license of any resident of the state, upon receiving notice of the conviction of such person in another state of an offense therein which, if committed in this state, would be grounds for the suspension or revocation of his license.

. § 322.27 Authority of department to suspend or revoke license.—
******
(3) There is established a point system for evaluation of convictions of violations of motor vehicle laws or ordinances, and violations of applicable provisions of s. 403.413(5)(b) when such violations involve the use of motor vehicles, for the determination of the continuing qualification of any person to operate a motor vehicle. The department is authorized to suspend the license of any operator or chauffeur upon showing of its records or other good and sufficient evidence that the licensee has been convicted of violation of motor vehicle laws or ordinances, or applicable provisions of s. 403.-413(5)(b), amounting to 12 or more points as determined by the point system. The suspension shall be for a period of not more than 1 year.
******
(f) In computing the total number of points, when the licensee reaches the danger zone, the department is authorized to send the licensee a warning letter advising that any further convictions may result in suspension of his driving privilege.